ANCHOR IN MARINA, INC., *et al.*, Plaintiffs-Appellants, *v.* THE GRUNDY COUNTY NATIONAL BANK *et al.*, Defendants-Appellees.

Third District No. 75-11

Opinion filed January 23, 1976.—Rehearing denied March 9, 1976.

Alschuler, Putnam, McWethy, Weiss & Weiler, of Aurora (Samuel Alschuler, of counsel), for appellants.

Pool & Pool, of Ottawa (Ernest H. Pool, Jr., of counsel), for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This appeal is from the judgment of the circuit court of La Salle County, after bench trial, denying the complaint of Anchor In Marina, Inc., and National Bank of Austin as trustee (hereinafter collectively referred to as Charles Black) seeking reformation of the legal description of the land contained in a deed from the defendants-appellees (hereinafter referred to as Carey) to plaintiff Black. This description, prepared by the surveyor, Sexton, is alleged by plaintiffs to mistakenly describe the land which plaintiffs agreed to buy and said defendants agreed to sell. The complaint also seeks reformation of subsequent documents involved in the sale of the balance of the Carey farm to other defendants-appellees (hereinafter referred to as Testa) including the deed and the trust deed in which the description, also prepared by the surveyor Sexton, includes the land which was allegedly omitted from plaintiff's deed.

The issue here is whether the trial court committed error by denying plaintiffs' prayer for reformation. Thus the question to be decided by this court is whether the evidence as a matter of law establishes mutual mistake. There seems to be general agreement among the parties as to the applicable law relating to reformation of a contract in writing on the basis of mistake. Reformation of a written instrument on the ground of mistake requires the mistake be proved by clear and convincing evidence and be mutual and common to both parties to the instrument. *Skelly v. Ersch*, 305 Ill. 126, 137 N.E. 106, and *Christ v. Rake*, 287 Ill. 619, 122 N.E. 854.

The plaintiff, Anchor In Marina, Inc., was organized by Charles Black and others to buy land which is the subject matter of this litigation and to construct and operate a marina thereon. Black negotiated with J. Campbell Carey who is one of the trustees of the defendant trust which owned the real estate in question and sold it to plaintiff. About four years after Black began the negotiations with Carey and about three years after the Black deeds were recorded the defendant trust conveyed the balance of the land which is in dispute here to the Grundy County National Bank as trustee of two trusts of which the defendant Mannheim Corporation is the sole beneficiary. Defendant Joseph Testa is the president and sole stockholder of the Mannheim Corporation.

The Village of Seneca is located on the eastern edge of La Salle County on the north bank of the Illinois River. Route 170 extends south from Seneca. Immediately after leaving Seneca the highway crosses the river on the bridge to the south bank from which it continues south. A short distance south of the bridge the highway is intersected at right angles by a road leading east. This is the road referred to within as DuPont

Road. DuPont Road runs roughly parallel to the south bank of the river. The land which is the subject matter of this litigation is situated east of Route 170, south of the river and on both sides of the DuPont Road. The main issue here relates to the eastern boundary of this land.

In September, 1968 Black met Carey to discuss the purchase of the land. From Black's testimony it appears Carey showed Black an aerial photograph of the farm which showed the land in which Black was interested contained 22.1 acres. Carey indicated a willingness to sell the land at $2,000 per acre but insisted Black also purchase an identical tract to the south of the first tract at the price of $750 per acre. Black agreed to the price but insisted he was willing to pay for only so much of the land as he could actually use. This would exclude the right of way of DuPont Road which crossed the two tracts, the part of the land which would be inundated at high water, the subdivision setback line, any portion of the land in the right of way of Route 170 at the western boundary of the tracts, and the portion of the land east of a creek which entered the Illinois River at the northeast corner of the field. Black estimated the exclusions would leave about 20 acres of usable ground in the northern tract for which he was willing to pay and he agreed to buy a like amount in the southern tract. Black and Carey agreed to a purchase price of $55,000 regarding which there is no dispute.

Carey informed Black he would have to obtain a survey of the land and recommended Francis Sexton who had done previous surveying work for Carey. Both parties agreed to use Attorney John McNamara to prepare the necessary papers. Black contacted the Sexton Engineering Company and talked to one of its employees. He testified he left with this employee an aeriel photograph of the area on which he had marked the approximate boundaries of the agreed purchase. Sexton testified he had no knowledge of this photograph. At no time did Black ever talk directly with Sexton nor did Sexton ever have any conversation with Carey. In making the survey Sexton began at the east right of way line of Route 170 and traversed in an easterly direction measuring the land lying between the center line of the DuPont Road and the Illinois River until he reached the point where the parcel thus traversed contained exactly 20 acres. The line thus determined was then extended south of the road to be the eastern boundary of the second 20-acre parcel. He then traversed south from the center line of the DuPont Road measuring the land lying between the eastern boundary and the east right-of-way line of Route 170 until the land thus measured contained exactly 20 acres. This established the southern boundary of the 20-acre parcel south of DuPont Road. The formal plat of this survey was prepared by Sexton and delivered to Black who attached it to the wall of his office on the

property. It showed the eastern boundary of both 20-acre parcels to be a straight line at roughly right angles to the south bank of the Illinois River. The plat prepared and delivered contained the description used in the deed and was the basis for later documents. It described only one parcel of land containing 40 acres in all. The river frontage was shown to be 1913.9 feet. This plat included within the description the entire right of way of DuPont Road and the land along the river up to the water's edge. The western boundary of the portion north of the center line of DuPont Road was shown to be about 600 feet long while the western boundary south of DuPont Road was about 450 feet. The eastern boundary north of the center line of DuPont Road was about 350 feet while the southern boundary was about 942.5 feet.

■■  Carey sold the balance of the farm to Testa by deed dated November 2, 1972, and recorded December 2, 1972. Testa occupied the property he purchased excluding the property herein in dispute and rented space from Black on the disputed property and placed a trailer for his own use thereon, paid rent therefor and used the water and gas connections Black had installed. In September 1973 Testa entered upon the premises and commenced the erection of fences cutting off the residence occupied by Black south of DuPont Road and part of the eastern-most harbor built by Black north of the road. At this point plaintiff commenced suit to enjoin Testa's actions pendente lite and to reform the deeds. There seems to be no dispute as to the appropriateness of reforming the deed against the defendant Testa should there be a finding a mutual mistake of fact was indeed made. This is based on clear and convincing evidence Testa, the subsequent purchaser, had prior notice of plaintiff's claim of ownership as evidenced by his renting space and utility connections from plaintiff.

The whole dispute here relates to the intention of Carey and Black in negotiating the contract. The land in dispute here is not included in the plat of survey and the deeds to plaintiff. Carey contends the land which he intended to sell to plaintiff consisted of the west 20 acres of that part of his farm lying between the DuPont Road and the south bank of the Illinois River and an additional 20 acres lying south of the road with its eastern boundary being an extension of the east line of the first parcel. The plaintiff contends there are four areas in particular which are not accurately reflected in the deed: one, he and Carey discussed two tracts of land, one north and one south of the DuPont Road, rather than one 40-acre tract; two, they agreed the southern tract would be substantially a mirror image of the northern tract; three, they agreed the east line would commence at the intersection of the river and the

creek; and four, they agreed the price would be based on usable acres rather than total acres.

In the spring of 1969 Carey and his son visited the farm and Black and Carey's tenant Shockey were present. Carey told Black the eastern boundary was farther to the east than he had previously realized. He based this on his observation of a stake placed east of the house. Carey asked Black for an additional $10,000 for the house. Black refused on the grounds the house would be demolished anyway. The property containing the house includes the land in dispute here. Carey testified he agreed to sell 20 acres of river frontage north of DuPont Road and 20 acres of land of equivalent type south of DuPont Road. He testified if one parcel were laid on top of the other they would be more or less parallel. He testified further there was 175 feet of land near the bridge which Black had told him he did not want and there was other property south of the river, a 50-foot strip, which was the right of way for Route 170. Carey testified Black also talked about the waterway owning 50 feet from the river or water's edge back south. He claimed he did not remember any discussion about the right of way of DuPont Road. He did concede their agreement consisted of one parcel which if flipped over would be a mirror image of the other parcel.

Homer Shockey, a tenant who had farmed the land for Carey, testified the portion of property now occupied by Black north of DuPont Road was about 22.1 or 22.4 acres of tillable land. At the eastern boundary of this land was a creek and brush. He stated he met Black in the fall of 1968 and Black asked Shockey how long it would take to get the crops out. Shockey conferred with Carey regarding these growing crops and asked Carey how much of the land would be left for growing crops next year. Carey responded there might be a little left on the east side. Shockey testified the house was located 3 to 4 feet west of the east boundary of the stakes. He stated he told Carey the house was included within the area bordered by the stakes. Carey came down and Shockey showed him the stake lines. He stated Carey was quite put out about it and Carey and Black later argued about the house. Black refused to pay the additional $10,000. The house was subsequently torn down. Shockey also testified that when Testa purchased the balance of the farm Black's trailers were near where the old house had been. He stated he told Carey he was getting left with the road, that Black was not buying the road. Shockey told him Black was just buying the 20 acres and he was taking the whole field and 20 acres on the other side and the house. Carey testified that when he signed the deed he assumed it was the same property as was contained in the survey and also the same prop-

erty as shown on the ground by the monuments, stakes and east boundary. Carey stated he wasn't too excited about it because he felt the rest of the property was going to be bought anyway.

■■ Plaintiff introduced into evidence a copy of a sketch made by surveyor Sexton on the back of a menu while having dinner with Attorney McNamara on September 30, 1968. On the sketch Sexton noted at the top the river frontage to be conveyed was plus or minus one-half mile or 2640 feet. The description contained in the deed and survey shows the river frontage was 1913.9 feet. The sketch showed 20 acres north and 20 acres south of DuPont Road rather than one 40-acre tract as shown in the plat of survey and deed. Sexton testified that in legal terminology, in surveying, north or south of a road means north or south of the center line of that road. We may note here Carey and Black were neither lawyers nor surveyors and Sexton's ideas did not represent any specific directions given to him by either party.

■■ The evidence indicates in its material aspects Black's testimony does not seem to be contradicted either by Carey or Sexton, the surveyor. The major difference appears to be whether or not the right of way occupied by DuPont Road was intended by Carey and Black to be included in the land to be sold. The survey measured the land to be sold from the center line of DuPont Road. Black's testimony indicates the 20 acres he agreed to purchase or to pay for were in addition to the center line of DuPont Road. This aspect of the discussion between the parties is not materially contradicted in any way, Carey and Sexton being content to rely on the plat and in effect did not contradict Black's assertion the plat was not in accord with the original agreement.

■■ Under the circumstances of this case we believe the evidence fails to support the trial court's judgment since there is clear and convincing evidence of mutual and common mistake. Consequently, we believe the deeds should be reformed by providing plaintiff is entitled to 20 usable acres north of DuPont Road right of way and 20 usable acres south of DuPont Road right of way and the southern tract should be a mirror image of the northern tract.

For the foregoing reasons the judgment of the circuit court of La Salle County is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

ALLOY and STENGEL, JJ., concur.